UNITED STATES DISTRICT COURT

NOTHERN DISTRICT OF ILLINOIS

**RECEIVED**

MAY 11 2011

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

TYLON HUDSON,
Plaintiff,

vs.

COUNTY OF COOK, TODD H.
STROGER, THOMAS J. DART,
SUPERINTENDENT MARTINEZ,
LIEUTENANT JOHNSON, SALVADOR
GODINEZ, JOHN DOUGH #1,
OFFICERS: MACKLIN, OVERTON,
BAYNES, CRIBBS, GALLION,
BRYANT, DAVILLA, REECE, SANDERS,
CAMP, PORTER, JOHN DOUGH #2, AND
SUPERVISOR JOHN DOUGH #3.

11 C 3140
Judge Blanche M. Manning
Magistrate Judge Young B. Kim

THIS COMPLAINT IS UNDER THE CIVIL RIGHTS ACT, TITLE 42
SECTION 1983 U.S. CODE.

I.     **Plaintiff(s):**

A.     Name: Tylon Hudson

B.     List all aliases: N/A

C.     Prisoner identification number: 2008-1120252

D.     Place of present confinement: County Jail

E.     Address: 2650 S. california, chicago, IL 60608

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II.    **Defendant(s):**

(In A below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in B and C.)

A.     Defendant: See: Parties Page attachment

       Title: _____

       Place of Employment: _____

B.     Defendant: _____

       Title: _____

       Place of Employment: _____

C.     Defendant: _____

       Title: _____

       Place of Employment: _____

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

Revised 9/2007

## PARTIES

1. Plaintiff Tylon Hudson is a pre-trial detainee confined at the Cook County Department of Corrections ("CCJ) in Chicago, IL, and at all times of events described herein.

2. Defendant Cook County is a public entity organized under the laws of the State of Illinois.

3. Defendant Todd H. Stroger is former President of the Cook County Board of Commissioners. He is an elected official, and on information and belief in charge of the safety, and welfare of the County of Cook, Illinois, its governmental bodies, institutions, including but not limited to the Cook County Department of Corrections, Cook County Hospital, etc... He is sued in an indivisual and official capacity.

4. Defendant Thomas J Dart ("sheriff Dart") is sheriff of Cook County. He is an elected official. Sheriff Dart oversees operations at the Cook County Department of Corrections ("County Jail") Sheriff Dart is sued in his indivisual and official capacity.

5. Defendant Salvador Godinez is Executive Director of the County Jail. And on information and belief in charge of the management of operations at the County Jail. Director Godinez is sued in his indivisual and official capacity.

6. Defendant Superintendent Martinez is a Superintendent of division 10 at the County Jail, and on information and belief in charge of the safety, welfare, and operations of division 10. She is sued in her indivisual and official capacity. At the times of events described herein Martinez was Superintendent of div. 10.

7. Defendant Lieutenant Johnson is a Correctional Lieutenant of the County Jail, and on information and belief in charge of supervisory authority over Officers, and Sergeants. He is sued in his indivisual and official capacity. He works at div. 10.

8. Defendant John Dough #1 is a plumber employed by the County Jail, and on information and belief in charge of fitting and repairs of waterpipes at division 10. And is sued in an indivisual and official capacity.

9. Defendant John Dough #3 is a Supervisor of the Cook County Facilities Management Department of the County Jail, and on information and belief in charge of (including but not limited to) assuring the processing of work orders, and assigning the appropriate staff to repair problems therein. And is sued in an indivisual and official capacity.

10. Defendant Macklin is a Correctional Officer (officer) of the CCJ. And on information and belief in charge of the Safety and welfare of detainees. She is sued in her indivisual and official capacity.

11. Defendant Overton is an Officer of CCJ. And on information and belief in charge of the safety and welfare of detainees. She is sued in her indivisual and official capacity.

12. Defendant Baynes is an officer of CCJ. And on information and belief in charge of the safety and welfare of detainees. She is sued in her indivisual and official capacity.

13. Defendant Cribbs is an officer of CCJ. And on information and belief in charge of the safety and welfare of detainees. He is sued in his indivisual and official capacity.

14 Defendant Gallion is an officer of CCJ. And on information and belief in charge of the safety and welfare of detainees. She is sued in her indivisual and official capacity.

15. Defendant Bryant is an officer of CCJ. And on information and belief in charge of the safety and welfare of detainees. She is sued in her indivisual and official capacity.

16. Defendant Davilla is an officer of CCJ. And on information and belief in charge of the safety and welfare of detainees she is sued in her indivisual and official capacity.

17. Defendant Reece is an officer of CCJ. And on information and belief in charge of the safety and welfare of detainees. She is sued in her indivisual and official capacity.

18. Defendant Sanders is an officer of CCJ with a specialized duty (Job) First, on information and belief she is in charge of the safety and welfare of detaines

Second, on information and belief Defendant Sanders at the time of Plaintiffs injury and complaint was in charge of investigating and checking div 10 cells for repairs (inspecting all cells) at unit 2 - ▆▆▆ , and reporting and assuring that Facilities Management make repairs. She is sued in her indivisual and official capacity. On information and belief she is called also an "inspection officer" or "ACA", or similar name

19. Defendant Camp is an officer of CCJ. And on information and belief in charge of the safety and welfare of detainees He is sued in his indivisual and official capacity.

20. Defendant Porter is an officer of CCJ. And on information and belief in charge of the safety and welfare of detainees. She ▆▆ is sued in his indivisual and official capacity.

21. Defendant John Dough #2 is an officer of CCJ. And on information and belief in charge of the safety and welfare of detainees. And is sued in an individual and official Capacity.

22. All Defendant (officers) at the time of events described herein were assigned to or working at div. 10 of the "CCJ".

23. END.

**EXHAUSTION OF ADMINISTATIVE REMEDIES**

A) Is there a grievance procedure available at the County Jail?

Yes (X) or No ( )

B) Have I filed a grievance concerning the facts in this complaint

Yes (X) or No ( )

C) .What steps did I take?

Plaintiff filed a grievance on or about the week of Septer 8th, 2010, one on September 21, 2010, one both are unanswered.

D) What was the result?

both of the above grievances were unaddressed and unanswered.

E) If the grievance was not resolved to my sataifaction, did I appeal, and what were the results?

The plaintiff was informed by two different social workers, one being Mr. Heaton, that if plaintiff has filed grievances one no response was given don't exspect one, one there could be nothing to appeal.

F) Is the grievance pocedure completed?

Yes (X) or No ( )

**III.** List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: _Tylon Hudson V. County of Cook, et.al. 11-C-1756_

B. Approximate date of filing lawsuit: _March 14, 2011_

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _Tylon Hudson, Motion for Class Action certification" w/ 71 accompanying affidavits of detainees who suffered same injury._

D. List all defendants: _Cook County sheriff Darr, Scott kurtovich, D. Howell John Doush 1, 2, 3, and 4, 5, and 6._

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _United States District Court, Northern District, and Eastern Division_

F. Name of judge to whom case was assigned: _Blanche n. Naming_

G. Basic claim made: _Illegal search._

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _Pending_

I. Approximate date of disposition: _about March 14, 2011_

IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.

3

CASE NAME AND DOCKET NUMBER:

A. Tylon Hudson-vs-Thomas Dart, etc.,et al. , 10 c 8254

B. FILING DATE: December 29, 2010

C. PLAINTIFF: Tylon Hudson

D. DEFENDANTS: Thomas Dart, Superintendant Martinez ~~Clerk~~ and Salvador Godinel (Dir)

E. COURT: United States District Court, Northern District, and Eastern Division.

F. JUDGE: Blanche M. Manning

G. CLAIM: Diliberate Indifference

H. DISPOSITION: Dismissed

I. DATE OF DISPOSITION: April 14, 2011

CASE NAME AND DOCKET NUMBER:

A.  Tylon Hudson -vs- Thomas Dart, etc. et al., 10 C 8253

FILING DATE: December 29, 2010

B.

C.  PLAINTIFF: Tylon Hudson

D.  DEFEDANTS: Porshe Davis (officer) Lt. Blunt, Thomas Dart sheriff, Salvalor Godinel Dir.

E.  COURT: Northern District, Eastern Division

F.  JUDGE: Blanche manning

G.  CLAIM: Deliberate Indifference

H.  DISPOSITION: Pending

I.  DATE OF DISPOSITION: About December 29, 2010

## FACTS

1. On September 03, 2010 the Plaintiff informed and showed Defendant John Doe the water leak coming from his cell ceiling, which leaked from behind the light fixture, down the cell wall and onto the floor, and the pool  of water therefrom.

2. The Plaintiff requested to be relocated until repairs were done.

## DELIBERATE INDIFFERENCE,
## RISK OF HARM AND PERSONAL
## SAFETY, AND HAZARDOUS CO-
## NDITIONS

3. Defendant Doe told the Plaintiff that a work order would be filed, and within 1 to 2 days repairs would be done, and the water leak nor water therefrom was an emergency, so the Plaintiff could not be relocated. The Plaintiff was allowed to mop up the water.

4. On September 05, 2010, the Plaintiff informed and showed Defendant Macklin the water leak, and pool  of water therefrom, and the above communication he had with Defendant Doe (see exhibit #1, witness affidavit).

5. The Plaintiff requested to be relocated until repairs were done.

6. Defendant Macklin told the Plaintiff that a work order would be filed and within 1 to 2 days repairs would be done, and she would contact Defendant Sanders (inspection officer) to inform her of the water leak, and pool.  of water therefrom.

7. Defendant Macklin told the Plaintiff to  place towels, blankets, or sheets in the area where the water came into contact with the floor to absorb it, and the water leak nor water therefrom was an emergency, so the Plaintiff could not be relocated . the Plaintiff was ——  allowed to mop up the water.

8. On September 06, 2010 the Plaintiff informed and showed Defendant Camp the water leak and pool  of therefrom, and the abovementioned communications he had with said defendants.

9. The Plaintiff requested to be relocated until repairs were done.

10. Defendant Camp told the Plaintiff that a work order would be filed, and within 1 to 2 days repairs would be done, and he would contact  Defendant sanders (inspection officer) to inform her of the water leak, and pool  of water thererfrom. And the water leak nor pool  of water therefrom was an emergenccy, so the Plaintiff could not be relocated. The Plaintiff was allowed to mop up the water.

11. On September 07, 2010 the  Plaintiff informed and showed Defendant Divilla the water leak, and pool  of water therefrom, and the aforementioned communications he had with said defendants (see exhibit #1, witness affidavit).

12. FYI: at number 8, of this complaint the Plaintiff intended and adds the word water after the word pool of.

12. The Plaintiff requested to be relocated until repairs were done.

13. Defendant Divilla told the Plaintiff that she would inform the officer who relieved her of her shift (Defendant Overton) about the water leak and **pool** of water therefrom.

14. Defendant Divilla told the Plaintiff that the water leak nor **pool** of water therefrom was an emergency, so he could not be relocated. The Plaintiff was allowed to mop up the water.

15. On September 08, 2010 the Plaintiff informed and showed Defendant Overton the water leak and **pool** of water therefrom, and the aforementioned communications he had with said defendants (see exhibit #1, witness affidavit).

16. The Plaintiff requested to be relocated until repairs were done.

17. Defendant Overton told the Plaintiff that "they will get around to it" in about 1 to 2 days, **and** that she already heard about the water leak, and **pool** of water therefrom.

18. Defendant Overton told the Plaintiff that the water leak nor Pool ~~pool~~ of water therefrom was an emergrncy, so the Plaintiff could not be relocated. The Plaintiff was allowed to mop up the water.

19. On September 08, 2011 the Plaintiff informed and showed Defendant Reece the water leak and **pool** of water therefrom, and the aforementioned communication he had with named defendants (see exhibit 1, witness affidavit).

20. The Plaintiff requested to be relocated until repairs were done.

21. Defendant Reece told the Plaintiff that she would inform the officer who relieved her of her shift (Defendant Overton) about the water leak and **pool** of water therefrom

22. Defendant Reece told the Plaintiff that the water leak nor the **pool** of water therefrom was an emergency, so the Plaintiff could not be relocated. The Plaintiff was allowed to mop up the water.

23. On September 09, 2011 the Plaintiff again informed and showed Defendant Overton the water leak and **pool** of water therefrom (see exhibit 1, witness affidavit)

24. The Plaintiff requested to be relocated until repairs were done.

25. Defendant Overton told the Plaintiff that "this is the County Jail you are not at home" and that what she told the Plaintiff prior still stood (refering to what she told the Plaintiff on September 08, 2010). The Plaintiff was allowed to mop up the water.

26. On September 11, 2010 the Plaintiff informed and showed Defendant Baynes the water leak and pool of water therfrom, and the **said communications** he had with said defendants. (See: exhibit 1, witness affidavit).

27. The Plaintiff requested to be relocated until repairs were done.

28. Defendant Baynes told the Plaintiff that she would contact Defendant Sanders (inspection officer) to inform her of the water leak and pool of water therefrom.

29. Defendant Baynes told the Plaintiff that the water leak nor the pool of water therefrom was an emergency, so the Plaintiff could not be relocated. The Plaintiff was allowed to mop up the water.

30. On September 12, 2011 the Plaintiff informed Defendant Cribbs the water leak and pool of water therefrom, and the aforementioned communication he had with said defendants.(see exhibit 1, witness affidavit)/

31. The Plaintiff requested to be relocated until repairs were done.

32. Defendant Cribbs told the Plaintiff that he would contact Defendant Sanders (inspection officer) to learn the status of any work order filed for the Plaintiffs cell.

33. Defendant Cribbs told the Plaintiff that his cell should be repaired within 1 to 2 days, and the water leak nor pool of water therefrom was an emergency, so the Plaintiff could not be relocated. The Plaintiff was allowed to mop up the water.

34. On September 14, 2010 the Plaintiff informed and showed Defendant Gallion the water leak and pool of water therefrom, and the aforesaid communications he had with said defendants.(see exhibit 1, witness affidavits).

35. The plaintiff requested to be relocated until repairs were done.

36. Defendant Gallion told the Plaintiff that she would contact Defendant Sanders to inform her of the water leak, and pool of water therefrom, and learn of any work orders for the Plaintiffs cell.

37. Defendant Gallion told the Plaintiff that she would have to contact the division seargent to learn how to remedy the issue with the water leak, pool of water therefrom, and relocation of the Plaintiff and his cellmate.

38. Defendant Gallion never responded back to the Plaintiff as to her results regarding relocating the Plaintiff ~~the Plaintiff~~ or what she learned from the seargent regarding the water leak or pools of water therefrom. The Plaintiff was allowed to mop up the water.

39. On September 14, 2011 the Plaintiff informed and showed Defendant Bryant the water leak and pool of water therefrom.(see exhibit 1, witness affidavit).

40. The Plaintiff requested to be relocated until repairs were done.

41. Defendant Bryant told the Plaintiff that on information the Plaintiff had already spoke to Defendant Gallion prior this day (September 14, 2011), and she would not supercede anything that another officer has already done "because officers don't do that."

42. Defendant Bryant told the Plaintiff that if the water leak was not repaired by the next time she was scheduled to his unit she would learn what the status of the repairs are to the Plaintiffs cell. The Plaintiff was allowed to mop up the water.

43. On September 14, 2010 the Plaintiff informed defendant Johnson about his continuing water leak and pools of water therefrom, and the aforementioned communications he had with said defendants (see exhibit 1, witness affidavit).

44. The Plaintiff requested to be relocated until repairs were done.

45. Defendant Johnson told the plaintiff that he would investigate the events explained to him by the Plaintiff, and get back with him later,

46. Defendant Johnson did not respond back to the Plaintiff whatsoever regarding any of Plaitiff's requests and cell problems (mentioned in no. 43 of this complaint).

47. Defendant Johnson told the Plaintiff that he would investigate the events explained to him by the Plaintiff and get back to him later.

48. Defendant Johnson never responded back to the Plaintiff whatsoever.

49. On September 15, 2010, the Plaintiff again informed and showed Defendant Macklin the water leak and pool of water therefrom (see exhibit 1, witness affidavit).

50. The Plaintiff, again requested to be relocated until repairs were done.

51. Defendant Macklin told the Plaintiff that she would again contact defendant Sanders (inspection officer) to learn the status of repairs to be done on his cell. The defendant was allowed to mop up the water.

52. At approxiamately 1:30 pm the cell doors were opened simontaneously on Plaintiffs unit, for "lock up".

53. Defendant Macklin at the above time still had not responded back to the Plaintiff regarding said requests.

54. The Plaintiff after the doors were simontaneously opened went directly to his cell.

55. FYI: according to correctional officers, seargants, and lieutenants, if a detainee is not at his cell when the officer is there to lock him in he will receive a "disciplinary ticket" and be battered up.

56. Unbeknownst to the Plaintiff that the water leak had severely worsened, the Plaintiff walked into his cell about 2 to 3 feet, slipped in a large pool of water, fell violently and extremely hard onto the concrete floor, severely injuring his back to the extent Plaintiff legs were completely motionless. the Plaintiff could not move his legs whatsoever for a time. (See exhibit 2 and 3 witness affidavits)

57. The Plaintiff yelled and cried tears in agony. The pain the Plaintiff endured was unbearable, to the extent he thought he would loose consciousness. (See exhibit 2, witness affidavit)

FYI: NO. 47 and 48 are the same meaning as 45 and 46 and is Surplasage.

FYI: The words "lock up" in no.52 is a time of day where detainees are locked into their cells.

58. Captain Plexico, Sergeant Orange, B. Villereal, and Nurse Jefferson came to The Plaintiffs aid. (See exhibit S, grievance , and 2 and 3 , witness affidavits)

59. Immediately, and the first question that was asked when the above-persons came to the Plaintiffs cell was by Captain Plexico who said "where did all this water come from." also he asked "who was told about this." (see exhibit S, grievance).

60. Captain Plexico was informed and shown the water leak, he was provided several names of officers who were informed. (see exhibit S, grievance)

61. The Plaintiff while still in excruciating pain  was dropped in  a wheel chair by Nurse Jefferson, who grabbed the Plaintiffs ankle area, and "Detainee Darnell Tolliver, I.D. 2009       who grabbed the Plaintiff under his arms and together Nurse Jefferson and Darnell Toliver dropped the Plaintiff into the wheelchair. ( See: exhibit 2 , grievance , and 2 , and 3, witness affidavits)

62. The customs, policies, practicies, and actions of deliberate indifference is so embedded within the minds and actions of CCJ Correctional officers, and Supervisory Officers that the following continuation of my complaint that is numbers 61 to 64 provide an illustration of gross deliberate  indifferant actions of CCJ Officers as a whole:

    A) the Plaintiff is approxiamately 180 pounds in weight.

    B) Nurse Jefferson is approxiamately  115 pounds in weight.

    C) Darnell Tolliver is approxiamately 170 pounds in weight, has a Colostomy bag, and a physical handicap, in that he has a debilitating limp, to the extent he ~~requires~~ has a cane to walk, etc...

63. Again, Nurse Jefferson, and 'Detainee  Darnell Tolliver' are the people who dropped the Plaintiff into the wheelchair recklessly. (See exhibit S, grievance and 2 and 3, witness affidavits)

64. the three officers who responded to the Plaintiffs cell, that is Captain Plexico, who is approxiamately 6 feet, and 3 inches in height and approxiamately 270 pounds in weight  and very muscular in build, Seragent Orange , who is approxiamately 5 feet and 10 inches in height————and approxiamately 300  pounds in weight, ands very muscular, and Correctional Officer B. villereal, who is approxiamately 5 feet and 9 inches in height and approxiamately  220 pounds in weight and very muscular in build upon request refused to assist Nurse Jefferson with putting the Plaintiff in the wheelchair. (See exhibit S grievance and 2 and 3, witness affidavits)

65. The Plaintiff asserts that the process of being dropped into the wheelchair by Nurse Jefferson and Darenell Tolliver was extremely painful, mentally debilitating, and caused the Plaintiff an anxiety attack.

66. After the extremely painful enconter the Plaintiff expereienced with being ~~placed~~ droped into the wheelchair he was eventually escorted to The County Jails Hospital (Cermak health Services [Cermak].). (see exhibit S grievance)

67. The Plaintiff was treated by Doctor Shannon, and received a cane to assist him with walking. (see exhibit , doctors order)

9

**68.** After the Plaintiff was seen by medical he was returned to his unit where he was informed by By and officer that him and his cellmate were being transfered to a different cell until the water leak was repaired , the cell was closed. to

**69** The Plaintiff was transferred to cell 2105 and his cellmate was transferred to cell 2114.

70. The Plaintiff reasserts that the customs, policies, practices, and actions of deliberate indifferance are so embedded in the minds of County Jail Correctional officers and supervisory officers that for an example:

71. On September 15, 2010 the plaintiffs cell was closed for repairs and he and his cellmate were relocated, to seperate cells.

72. On September 17, 2010 in the early morning detainee (County Jail) Curtis Mosley, 2010-021726 was moved into cell 2102 On unit 2-A (plaintiffs prior cell), which had an 'unrepaired' water leak (see exhibit 4, witness affidavit)

73. Curtis Mosley ("Mosley") observed the water leak and pool of water therefrom and requested to be relocated, which did not occur until the next day (September 18, 2010). (see exhit 4, witness affidavit)

74. 'Again' on September 19, 2010 Richard Listenbee, I.D. 2010-0918055, in the early morning hour was moved into cell 2102 plaintiffs prior cell, which had an 'unrepaired' water leak. (he also had a cellmate who moved with him on this day)

75. On September 20, 2010 Richard Listenbee and his cellmate complained to supervisory officers of the water leak and pool of water.

76. Subsequently, Defendant Gallion was verbally reprimanded by said supervisory officer, and Richard Listenbee was moved to cell 2112 on unit 2-A and his cellmate to another unit.

77. The Plaintiff asserts that Officer Gallion regarding the abovesaid reprimand was admonished by the supervisory officer for not addressing the issue accordingly (transferring the detainees to another cell), when she saw the problem)

77. The Plaintiff asserts that the water leak in his former cell, i.e., 2102 was unrepaired — from Sep. 03, 2010 until on or about September 29, 2010.

78. In spite of the cell being unrepaired Officers continued to occupy said cell with detainees, thereby putting at risk the safety and health of detainees.

79. The Plaintiff asserts that on or about October 4, 2010 Defendant Sanders was inquired as to the water leak in cell 2102 plaintiffs former cell, that is ~~that and why the water to~~ what caused the water leak. Defendant Sanders responded that the Penthouse (on top of the Division 10 roof) pipe had a hole in it thereby causing leaks, to many cells at div. 10.

80. The Plaintiff asserts that he and others recognized mold in the area where the water came into the cell, on or about the week of September 08th, 2010, including the ~~smell~~ oder thereof.

81. The Plaintiff asserts that he submitted a grievance on September 05, 2010, against Defendant Macklin and others regarding his exposure to a severely hazardous condition, but it went unaddressed and unanswered.

82. The plaintiff asserts that his back injury continues to effect his activities of daily living (adversely) that is his sleep deprivation, severe and continuing pain, mental anguish as a result of said problems, anxiety because of same, and range of motion problems.

83. The is scheduled for physical theraphy and has received a lot of pain medication and muscle relaxers, but to no avail plaintiff still suffers great pain continually.

84. END.

**V.** **Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

WHEREFORE, Plaintiff demands judgement against Defendants jointly and severly for compensatory damages and punitive damages in an amount to be determined at trial and fees and costs of this complaint and such other relief that this court deems, just, proper, and equitable.

**VI.** The plaintiff demands that the case be tried by a jury. ☒ YES ☐ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this ___April___ day of ___21___, 20 __11__

_Tylon Hudson_
(Signature of plaintiff or plaintiffs)

_Tylon Hudson_
(Print name)

_2009-1120252_
(I.D. Number)
_Cook County Department of Corrections_
_P.o. Box 089002_
_Chicago, IL 60608_
(Address)

6

Revised 9/2007

MONELL CLAIM

MONELL CLAIM AGAINST THE COUNTY OF COOK, ILLINOIS, SHERIFF THOMAS J. DART, SALVADOR GODINEZ, TODD H. STROGER, SUPERINTENDENT MARTINEZ, AND JOHN DOUGH #3 UNDER TITLE 42 SECTION 1983 U.S. CODE FOR PUNITIVE, COMPENSATORY AND NOMINAL DAMAGES.

1. The Plaintiff realleges facts 1 thru 84 already stated herein. On information and belief the above defendants have established a custom, policy and practice that fails to provide detainees at CCJ with safe and enviromentally secure housing units. The Plaintiff, also on his own experience says that the abovesaid Defendants have established a custom, policy and practice.

2. This information is based, in part, on the July 11, 2008 Department of Justice ("DoJ") findings letter addressed to Sheriff Dart, Defendant Godinez, and Todd Stroger (Defendant Stroger), attached hereto as Exhibit A, as well as the Plaintiffs own observations and experiences.

3. On May 13, 2010 the United States filed suit against Cook County and Sheriff Dart alleging (including but not limited to) 1. Inadequate sanitation and environmental conditions, I.D. at page 73 in findings letter, including Plumbing deficiencies and electrical hazards, I.D. at page 74 in findings letter, and 75.

4. The Plaintiff asserts that about 3 ½ months before the Plaintiffs injury mentioned in his complaint a federal lawsuit was filed against the County Jail United States v. Cook County, case no. 10-cv-2946 (N.D. Ill.) for failure to remedy constitutional violations at the County Jail relating to conditions of confinement. I.D. page 9 findings report.

5. Each of the said defendants in this Monell claim should and would have personal knowledge regarding the above suit.

6. Each of the said defendants in this Monell claim has/had the authority to stop or eliminate said customs, policies, and practices complained of herein.

7. Additional, even after and to attest to the Plaintiffs complaint Mr. Othar Ames on the same unit as Plaintiff I.D. 2006-0075867 also shared the same problem as Plaintiff a waterleak, and on his grievance response is an admission that they did exist. (See exhibit 6 grievance response).

8. Also, the plumbing problems are not only those of the Plaintiff and are spread throughout div. 10 Mr. Bryon Thomas, ID. 2009-1021170 also, grieved and received a response involving his plumbing problems (See exhibit 7 and 8 grievance and response)

WHEREFORE, Plaintiff demands judgement against Defendants, Jointly and severally for compensatory damages and punitive damages in an amount to be determined at trial, fees and costs of this complaint and such other relief that this court deems just, proper and equitable

Respecrfully Submitted,

Tylon Hudson